# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MYRON G. BLANCHARD,

    **Plaintiff,**

v.                                            Case No. 18-CV-1166

ANDREW M. SAUL[1],
**Commissioner of Social Security**

    **Defendant.**

## I.    DECISION AND ORDER

### INTRODUCTION

Plaintiff Myron Blanchard alleges that he has been disabled since September 27, 2010, due to a bulging lumbar disc, degenerative disc disease, depression, ulnar nerve relocation in left arm, and back fusion. (*See* Tr. 78, 95.) In October 2011 he applied for disability insurance benefits and supplemental security income. (Tr. 197-212.) After his applications were denied initially (Tr. 74-75) and upon reconsideration (Tr. 76-77, 112-13), a hearing was held before an administrative law judge (ALJ) on January 10, 2014 (Tr. 38-73). On March 7, 2014, the ALJ issued a written decision concluding Blanchard was

---

[1] As of June 4, 2019, Andrew M. Saul is the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), he is substituted as the named defendant in this action.

not disabled. (Tr. 19-30.) The Appeals Council denied Blanchard's request for review on May 20, 2015. (Tr. 1-3.)

On July 16, 2015, Blanchard filed an action in this court challenging the ALJ's March 2014 decision. (Tr. 646-49.) On September 19, 2016, this court remanded the matter for further proceedings and ordered the ALJ to consider Blanchard's testimony about the need to elevate his legs (Tr. 666-72) and "explain how a limitation of being off task for 5% of the workday coupled with 'unskilled work' adequately accounts for Blanchard's moderate limitations in concentration, persistence, or pace" (Tr. 673-75). The Appeals Council then instructed an ALJ to offer Blanchard the opportunity for a second hearing, consolidate Blanchard's additional claims for benefits, take any further action needed to complete the administrative record, and issue a new decision. (Tr. 683-84.)

A second hearing was held before the same ALJ on March 29, 2017. (Tr. 621-45.) On May 10, 2017 the ALJ issued a written decision, concluding that Blanchard "was not disabled prior to August 16, 2016, but became disabled on that date and has continued to be disabled through the date of [the ALJ's] decision (Tr. 589-608), which became the final decision of the Commissioner. (*See* Tr. 577-79; 20 C.F.R. § 404.984 ("[W]hen a case is remanded by a Federal court for further consideration, the decision of the administrative law judge will become the final decision of the Commissioner after remand on your case unless the Appeals Council assumes jurisdiction of the case.").) This action followed.

2

All parties have consented to the full jurisdiction of a magistrate judge. (ECF Nos. 6,7.) The matter is now ready for resolution.

**ALJ'S DECISION**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. The ALJ found that Blanchard "has not engaged in substantial gainful activity since the alleged onset date[.]" (Tr. 591.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). The ALJ concluded that Blanchard has the following severe impairments: "disorders of the spine with status post surgeries, left ulnar neuropathy, obesity, and depression[.]" (Tr. 592.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 4, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 416.1526, 416.920(d), and 416.926) (called "The Listings"). If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month duration requirement, 20 C.F.R. § 416.909, the claimant is disabled. If the

3

claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. The ALJ found that Blanchard "has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" (Tr. 593.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), "which is [the claimant's] 'ability to do physical and mental work activities on a regular basis despite limitations from [his] impairments.'" *Ghiselli v. Colvin*, 837 F.3d 771, 774 (7th Cir. 2016) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-4p. In other words, the RFC determination is a "function by function" assessment of the claimant's maximum work capability. *Elder v. Astrue*, 529 F.3d 408, 412 (7th Cir. 2008). The ALJ concluded that Blanchard has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he is unable to climb ladders, ropes or scaffolds; he can occasionally stoop, crouch, kneel, crawl, and climb ramps and stairs; he must be allowed to change positions between sitting and standing every 60 minutes, for a few minutes, before returning to sitting or standing; he is unable to operate foot controls; he is limited to frequent handling and fingering with the non-dominant left upper extremity; he is limited to unskilled work; and he is limited to jobs having only occasional decision making and changes in work setting.

(Tr. 596.)

4

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1526, 416.965. Blanchard's past relevant work was as a maintenance repairer. (Tr. 606.) The ALJ concluded that Blanchard "has been unable to perform any past relevant work[.]" (Tr. 605.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. At this step the ALJ concluded that, "[p]rior to August 16, 2016, the date [Blanchard's] age category changed, considering [his] age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that [he] could have performed[.]" (Tr. 606.) In reaching that conclusion, the ALJ relied on testimony from a vocational expert, who testified that a hypothetical individual of Blanchard's age, education, work experience, and RFC could perform the requirements of representative occupations such as an order clerk, sorter, and polisher. (Tr. 607.) After finding that Blanchard could perform work in the national economy, the ALJ concluded that he was not disabled prior to August 16, 2016. (*Id.*)

**STANDARD OF REVIEW**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *LD.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C.

§ 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

**ANALYSIS**

Although it's unclear, Blanchard seems to argue that the ALJ erred in evaluating (1) his statements concerning the intensity, persistence, and limiting effects of his pain and numbness in his left lower extremity, and (2) the impact of his obesity on his need to elevate his legs. (ECF No. 12.)

**I.     Left Lower Extremity**

In making his RFC determination, the ALJ must engage in a two-step process to evaluate a claimant's symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could

reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304 at *3; *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities …." SSR 16-3p, 2017 WL 5180304 at *3. The ALJ's evaluation of a claimant's symptoms is entitled to "special deference" and will not be overturned unless it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (citing *Eichstadt v. Astrue*, 534 F.3d 663, 667-68 (7th Cir. 2008)).

Blanchard "alleged an inability to work due to disorders of the spine, radicular leg symptoms, a back fusion, ulnar nerve relocation in the left arm, anxiety, and depression." (Tr. 596.) He asserted "that he suffered from back pain, numbness and pain in the left lower extremity, and numbness in the fingers of the left hand;" "that he elevated his legs over fifty percent of the day;" and "that these conditions affected his abilities to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, complete tasks, concentrate, understand, follow instructions, use his hands, and get along with others." (*Id.*)

The ALJ found that Blanchard's "medically determinable impairments could reasonably be expected to produce [his] alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 597.)

7

As a result, the ALJ concluded that Blanchard's symptoms "affect [his] ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." (*Id.*)

As part of the ALJ's evaluation of Blanchard's symptoms, the ALJ addressed Blanchard's testimony "that he elevated his legs during the day." (Tr. 605.) Blanchard testified at the March 2017 hearing:

> Q     All right. Do you spend time during the day elevating your legs now?
> A     Yes.
> Q     How much time?
> A     Well I, I can't -- I'd say over 50 percent of the time just because that's the chairs we have. And while I'm sitting I put them up quite often.
> Q     Does elevating your legs make any difference?
> A     It does as long as I don't over walk to begin with. If I, if I over walk or over exert them it doesn't matter what I do. That -- once the pain gets there -- there's, there's not much I can do but -- time. You know laying down and fighting to go to sleep.
> Q     All right. And is it a recliner kind of chair that I guess I'm thinking about when you're sitting down or is it some other kind of a chair?
> A     Yeah, it's a recliner.
> Q     Sit down, tip back, prop your feet up?
> A     Yeah.
> Q     Okay.

(Tr. 631.) The ALJ concluded:

> [A] thorough review of the medical evidence does not reveal any reference or recommendation by a doctor or care provider for leg elevation. While [Blanchard] may elevate [h]is legs during the day, without objective medical evidence establishing the necessity for such, the undersigned is not convinced such limitation must be included in the [RFC] finding herein. The need for such leg elevation limitation has not been established by the evidence of record. Accordingly, the undersigned finds that a limitation

8

within the [RFC] about leg elevation is not supported by the overall evidence of record.

(Tr. 605.)

Citing *Smith v. Astrue*, 467 F. App'x 507 (7th Cir. 2012), Blanchard argues that the ALJ "failed to link any evidence to his conclusion regarding [Blanchard's] need for leg elevation." (ECF No. 12 at 12.) In *Smith*, the plaintiff alleged that the ALJ failed to explain why she rejected her assertion that she must elevate her leg, arguing:

> [T]he ALJ made only a cursory comment on this point: "The medical records do not support the limitations alleged by the claimant that she is medically required to elevate her legs." The ALJ failed to link any of the evidence to her conclusion regarding leg elevation, …, and … the Commissioner [tried] to salvage the ALJ's conclusion through "post hoc rationalization."

467 F. App'x at 510. The Court of Appeals for the Seventh Circuit agreed with Smith, explaining:

> The ALJ here did cite to some medical records (mostly from Dr. Shah's review) but did not explain *how* the records undermined Smith's testimony that she needed to elevate her leg. Contrary to the [lower court's] conclusion, there was evidence in the record that Smith had to elevate her leg, including her hearing testimony; the reports she and her husband filled out for the agency shortly after she filed her application; records from her hospital stay, which included instructions to keep the leg elevated after discharge; and records from the two follow-up appointments, at which the edema in her leg was characterized as either "moderate" or severe." The ALJ did not explain why she disregarded this evidence and instead credited Dr. Shah's evaluation. This error cannot be deemed harmless because we cannot say "with great confidence" that the result would be the same on remand.

*Id.* at 510-11 (emphasis in original and internal citations omitted).

Unlike the plaintiff in *Smith*, Blanchard does not present any evidence, besides his own testimony, showing that he needs to elevate his legs during the day. While Blanchard points to "objective medical findings" that indicate pain and numbness in his left lower extremity (ECF No. 12 at 13-14), the ALJ conducted a "thorough review of the medical evidence" and correctly found that there was no "reference or recommendation by a doctor or care provider for leg elevation." (Tr. 605; *see also, e.g.,* Tr. 290, 294, 298, 321, 335, 347, 350, 354, 848, 852, 859, 932 (all indicating that Blanchard had no edema or swelling in his lower extremities).) In addition, the ALJ gave some weight to the opinions of state-agency consultants Ronald Shaw, M.D., and Mina Khorshidi, M.D., both of whom opined that Blanchard had the ability to stand and/or walk for at least two hours and sit for at least six hours in an eight-hour work day. (Tr. 91-92, 108-09, 441.) The ALJ also restricted Blanchard to work that "allowed [him] to change positions between sitting and standing every 60 minutes, for a few minutes, before returning to sitting or standing" (Tr. 596) to accommodate Blanchard's "reports of pain and abnormal sensations in the back and lower extremities. (Tr. 605; *see* Tr. 632 (stating that Blanchard can stand for about 45/60 minutes before he needs to sit down); Tr. 817 ("I need to be able to change my position regularly sit- stand- raise [legs] occasionally to relieve excessive pain.").)

As such, the court finds that substantial evidence supports the ALJ's conclusion that Blanchard's statements concerning his need to elevate his legs were inconsistent with the overall evidence in the record.

**II.    Obesity**

As a general rule, an ALJ is required to "consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); 20 C.F.R. § 404.1523(c). In cases where obesity is an issue, "[a]n assessment should … be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02-1p, 2002 WL 34686281 at *6. "[T]he ALJ must specifically address the effect of obesity on a claimant's limitations because, for example, a person who is obese and arthritic may experience greater limitations than a person who is only arthritic." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); SSR 02-1p, 2002 WL 34686281 at *6 ("The combined effects of obesity with other limitations may be greater than might be expected without obesity.").

The ALJ took note of Blanchard's extreme obesity, listed it as a severe impairment, and considered its effect, explaining in relevant part:

> The undersigned notes there is no medical listing for obesity. The undersigned has considered [Blanchard's] impairment of obesity using the criteria for the musculoskeletal, respiratory, and cardiovascular impairments under Listings 1.00Q, 3.00I, and 4.00F, as required by Social Security Ruling 02-1p. However, the evidence does not support a finding that [Blanchard's] obesity results in the severity of the symptoms required to meet or equal a medical listing.
> …
> Although [Blanchard's] BMI placed him in Level III [("extreme" obesity)], there was no evidence of any quantifiable impact of the obesity on his pulmonary, musculoskeletal, endocrine, or cardiac functioning.
> …

11

> [Dr. Jared Tyson's] opinion finds support in the medical evidence showing that [Blanchard] had disorders of the spine, neuropathy and obesity, but he still exhibited adequate function during a number of musculoskeletal and neurological examinations during the period at issue[.]
>
> …
>
> [T]he undersigned gives some weight to Dr. Khorshidi's assessment indicating that [Blanchard] required postural limitations. This assessment finds support in the evidence showing that [Blanchard] reported chronic pain and abnormal sensations due to his disorders of the back. This opinion also finds support in the evidence showing that [Blanchard] had a BMI over 40 kg/m2, which likely affected his ability to engage in some postural activities.

(Tr. 592, 594, 599, 603, 604.)

Blanchard argues that the ALJ failed to consider his obesity when assessing his need for leg elevation. (ECF No. 12 at 14-15.) However, Blanchard does not cite to any medical opinions or evidence showing that his obesity exacerbates his alleged need to elevate his legs. *See Bruce W. v. Saul*, No. 1:18-cv-02751-MJD-SEB, 2019 WL 2559544, at *9 (S.D. Ind. June 20, 2019) ("[Claimant] does not present any evidence specifically showing that his obesity combined with his other impairments … reduce his RFC to a greater degree than the limitations that the ALJ found were supported by the record."); *Cruzado v. Colvin*, No. 13 C 6220, 2015 WL 5093790, at *10 (N.D. Ill. Aug. 26, 2015) ("[W]hile Claimant suggests that her obesity aggravates her swollen legs, she does not provide any medical opinions or evidence in support of this conclusion. This is not enough for Claimant to show that her obesity impairs her work abilities."); *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006) ("No medical opinion in the record identified [claimant's] obesity as significantly aggravating her back injury or contributing to her physical

limitations. She also fails to point to any other evidence suggesting that her obesity exacerbated her physical impairments. Because [claimant] failed to 'specify how [her] obesity further impaired [her] ability to work,' and because the record relied upon by the ALJ sufficiently analyzes her obesity, any error on the ALJ's part was harmless."). Therefore, the ALJ did not err in failing to discuss the effect of Blanchard's obesity on his alleged need to elevate his legs. *See, e.g., Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); *Armstrong v. Barnhart*, 287 F. Supp. 2d 881, 887 (N.D. Ill. 2003) (explaining that "playing doctor" occurs when an ALJ draws medial conclusions without relying on evidence for it).

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **affirmed** and this action is dismissed. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 15th day of July, 2019.

WILLIAM E. DUFFIN
U.S. Magistrate Judge